NEWEL REID LA RUE, **8560** NO. 8560

versus : COURT OF APPEAL,

NEW ORLEANS RAILWAY & LIGHT CO.,ET AL., : PARISH OF ORLEANS

---

WILLIAM A. BELL, JUDGE.

---

October 30, 1922.

Court of Appeal,
PARISH OF ORLEANS

**8560**

BY: WILLIAM A. BELL, JUDGE.

Plaintiff herein sues the New Orleans Railway & Light Company and the National Surety Company of New York, in solido, in the sum of Four Thousand One Hundred and Fifty Dollars ($4,150.00) for damages sustained by him as a result of a collision with a street car of the New Orleans Railway & Light Company, on November 12th, 1920, at 5:40 o'clock, P.M., on the corner of Camp and Lafayette Streets in this City.

The New Orleans Railway & Light Company, as one of the defendants, through its receiver, J.D. O'Keefe, admits that an accident occurred, such as is described in plaintiff's petition, but it denies, as does the National Surety Company of New York, any liability therefor, and charges the plaintiff with gross contributory negligence. There was judgment in the trial court in favor of both defendants.

The issues in this case are purely those of facts, and from the evidence before us, we are convinced that the judgment of the trial court was correct. We find that the plaintiff, a white man of about forty (40) years of age, and employed at the time of the accident as a night watchman for the Canal-Louisiana Bank & Trust Company, was a partial cripple, having to walk with the assistance of a cane. This man, on the date of the accident, was standing on the Camp Street side of Lafayette Square at the intersection of Lafayette Street, and attempted to cross the street going towards the river, when he was knocked down by a Prytania car, and sustained a fracture of the tenth rib on the left side, and a lacerated wound on the left hip, with contusions of other parts of the body. He was confined in the hospital for fourteen days, and was under doctor's care until the middle of December of the same year.

The plaintiff swears that before crossing into the street from the sidewalk, he looked to see where the on-coming car was, and observed it at North Street taking on passengers, and that when he stepped on the track, the car was approximately 100 feet from him. He states that the car was going about twenty miles

264

an hour, but from the testimony of all other witnesses, this speed is ridiculously exaggerated, and we find that the car, at the time he was struck, was not going at more than from five to six miles an hour. We also find that the plaintiff stepped on the up-going car track when the car was not more than twenty-five feet from him, and that the motorman gave him every notice possible, three witnesses stating positively that the motorman rang his bell as soon as he observed the plaintiff's attempt to cross the car track. and that he made every effort to avoid the accident, by promptly putting on the brakes.

There were four eye witnesses to the accident: The motorman, two witnesses on the front of the car, and the driver of an automobile going down Camp Street towards Lafayette, on the river side of Camp. The auto driver testifies that he saw the plaintiff while he was driving his car in front of the central part of the post-office building, which may be estimated at about 150 feet from the corner of Lafayette and Camp Streets, and that the on-coming car appeared to witness to be about 200 feet away when witness first saw the car, and that witness noticed plaintiff's attempt to cross the street - a fact which caused witness to stop his down-going auto in order to avoid collision with the plaintiff; that witness heard the gong of the street car and noticed that plaintiff did not stop at the signal, but continued to cross the street, and that when he was struck by the car, witness stopped his auto about ten feet above the point of collision.

This witness, on cross-examination, shows that he was not at all certain as to the distance of the car when he first saw it coming up Camp Street, and the testimony of the several other witnesses is most contradictory on this point, the distance varying from 200 feet to 20 or 30 feet at the time plaintiff attempted to cross the street. Two witnesses on the car, however, who saw the plaintiff approaching the track, agree that he was most indifferent as to the danger he was incurring, and did not heed in any way the signal given him by the motorman, and furthermore, that plaintiff

265

did not look when he stepped into the street in the direction of the on-coming car. It appears that the plaintiff had nearly crossed the up-going track when he was struck by the left front step of the car and thrown under it, almost against the front left wheel, and that the car was brought to a full stop as rapidly as it was possible to do so. The fact that plaintiff was a cripple should have caused him to take unusual precaution in crossing this very busy thoroughfare at so late an hour as 5:40 o'clock in the afternoon of a November day.

We find conclusively, that the car which struck the plaintiff was going at a very moderate rate of speed, and while there is contradictory evidence as to whether the car had previously stopped at North Street rather than at Poydras Street before stopping to avoid the accident, we are convinced that the excessive traffic shown to have existed at the time prevented the car from going even at that rate of speed which is allowed under the law. In other words, the evidence is clear that the Railway Company and its employee were not guilty at any time prior to or after the accident, of any negligence, and that the motorman in charge of the car exerted every means humanly possible to avoid the accident which arose solely from the carelessness of the plaintiff, a pedestrian not naturally equipped, in his crippled condition, to take even the most conservative chance. We think that every circumstance which would have avoided the accident was within the control of the plaintiff, and that by no possible care on the part of the defendant Railway Company or its xxxx employee could the accident have been avoided. The judgment of the trial court is, in our opinion, therefore, correct, and should be affirmed.

It is therefore ordered, adjudged and decreed, that the judgment herein appealed from, be, and the same hereby is, affirmed, at plaintiff's cost in both courts.

### JUDGMENT AFFIRMED.

October 30th, 1922.